

EOD
04/10/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

IN RE: §
 §
**MICHAEL D. ADAWAY** § Case No. 06-10273
 §
 §
 Debtor § Chapter 13

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtor's Second Amended Chapter 13 Plan (the "Plan") proposed by the Debtor, Michael D. Adaway ("Debtor") in the above-referenced Chapter 13 case. Citifinancial Auto Credit, Inc. f/k/a Auto One Acceptance Corporation ("Citifinancial") objected to the confirmation of the Plan, and specifically the Plan's bifurcation of Citifinancial's claim into secured and unsecured components, upon the ground that its claim is entitled to protection from such §506 bifurcation by the "dangling paragraph" now appearing in the Code following 11 U.S.C. §1325(a)(9).[1] After allowing the parties to submit post-hearing briefing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1] This new paragraph was adopted upon the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter referenced as "BAPCPA"). For ease of reference, this opinion shall refer to the dangling paragraph as 11 U.S.C. §1325(a)(*).

[2] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

**Background**

On July 26, 2006, the Debtor filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code. The Debtor subsequently proposed a Second Amended Chapter 13 Plan under which he would tender $985.00 per month to the Chapter 13 Trustee for the first 3-month period and $1,197.00 per month for the succeeding 57 months. Though Citifinancial had filed a proof of claim only five days after the inception of the case in which it asserted a fully secured claim of $17,724.45, the 60-month plan proposed to bifurcate Citifinancial's claim into secured and unsecured components and pay the sum of $10,237 to Citifinancial in satisfaction of its secured claim for which a 2004 Mitsubishi Sport Lancer automobile purchased in July 2004 stood as the collateral.

Citifinancial timely filed an objection to the Debtor's proposed plan. At the hearing to consider confirmation, Citifinancial asserted that the provisions of §1325(a)(*) protected its claim from bifurcation. The Debtor asserted that such protection was unavailable to Citifinancial because the automobile in question had not been purchased for the personal use of the Debtor.[3]

---

[3] There is no dispute between the parties that the two other prerequisites of the statutory protection offered by §1325(a)(*) have been fulfilled: (1) that the Debtor's debt to Citifinancial was incurred within 910 days of the filing date and (2) that Citifinancial holds a valid purchase-money security interest in the Debtor's 2004 Mitsubishi.

**Discussion**

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, the confirmation of such a plan is governed by §1325(a) which states that "the court shall confirm a plan . . . " if the debtor demonstrates the existence of certain statutory prerequisites. Though some jurisprudence from other districts interprets the use of the word "shall" in that context differently,[4] this Court has consistently interpreted §1325(a) as setting forth mandatory prerequisites for confirmation which a debtor must demonstrate by a preponderance of the evidence even in the absence of any objection.

One of those prerequisites is §1325(a)(5) which governs the proposed plan's treatment of allowed secured claims.[5] §1325(a)(5) essentially provides three options

---

[4] Such cases assert that §1325(a) simply describes a scenario in which confirmation becomes mandatory but that it does not preclude confirmation in cases in which one or more of the enumerated requirements are absent.

[5] 11 U.S.C. § 1325(a)(5) specifically provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if –

    (5) With respect to each allowed secured claim provided for by the plan –
        (A) the holder of such claim has accepted the plan;

        (B)(i) the plan provides that–
            (I) the holder of such claim retain the lien securing such claim until the earlier of–
                (aa) the payment of the underlying debt determined under nonbankruptcy law; or
                (bb) discharge under section 1328; and
            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
        (ii) the value, as of the effective date of the plan, of property to be distributed

under which the proposed treatment of an allowed secured claim will be deemed appropriate for the purposes of confirmation: (1) by obtaining the acceptance of the treatment by the affected secured creditor; (2) by surrendering the collateral to the secured creditor; or (3) by providing for the retention of the existing lien by the creditor with "a promise of future property distributions (such as deferred cash payments) whose total value, as of the effective date of the plan, is not less than the allowed amount of the creditor's [secured] claim." *In re Robinson*, 338 B.R. 70, 73 (Bankr. W.D. Mo. 2006).

In pre-BAPCPA days, plans were routinely confirmed in reliance upon this "cramdown" option through which §506 was utilized to bifurcate a secured creditor's claim into secured and unsecured components. The allowed secured claim of the creditor, as defined by the replacement value of the collateral, regardless of the age or nature of such collateral, would then be satisfied through periodic payments, and any allowed unsecured deficiency claim would receive treatment as a general unsecured claim.

---

under the plan on account of such claim is not less than the allowed amount of such claim; and
   (iii) if–
      (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
      (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

  (C) the debtor surrenders the property securing such claim to such holder.

However, one of the major changes invoked by BAPCPA was the legislative effort to protect claims secured by newly-purchased vehicles from the use of this cramdown procedure by consumer debtors. This protection was enacted in the form of §1325(a)(*) which provides that:

> For purposes of paragraph (5), section 506[6] shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

---

[6] The bifurcation of a claim is accomplished through §506(a) which provides that:

    (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

    (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a).

By eliminating access to the bifurcation provisions of §506(a), the allowed amount of a claim which falls within the realm of protection offered by §1325(a)(*) must be paid in its entirety. *In re Nicely*, 349 B.R. 600, 603 (Bankr. W.D. Mo. 2006), citing *In re Brooks,* 344 B.R. 417 (Bankr. E.D.N.C. 2006); *In re Scruggs,* 342 B.R. 571 (Bankr. E.D. Ark. 2006); *In re Shaw,* 341 B.R. 543 (Bankr. M.D.N.C. 2006); and *In re Brown,* 339 B.R. 818 (Bankr. S.D. Ga. 2006).

However, the Debtor asserts that Citifinancial's claim is not entitled to the protections offered by §1325(a)(*) because the collateral which secures that claim was not "acquired for the personal use of the debtor." According to the Debtor, the vehicle was not purchased for *his* use, but rather to meet the transportation needs of his non-debtor spouse. The evidence presented at the confirmation hearing establishes that the Debtor works off-shore and is gone from home for extended periods of time. He drives his truck to a site near Houston, where it remains for the entirety of that particular employment trip until he utilizes it to return home. The Debtor testified without contradiction that he acquired the Mitsubishi vehicle in order to provide for the transportation needs of his wife during those repetitive, extended periods of time in which he and his vehicle are absent from home. The only probative evidence introduced by Citifinancial was that an unidentified party had checked on the applicable Retail Installment Sale Contract (which was admittedly signed by the Debtor) that the

Mitsubishi vehicle was to be primarily used for "personal, family or household" use, as opposed to a business, commercial or agricultural use, and the Debtor's admission during cross-examination that he has ridden as a passenger in his wife's vehicle on rare occasions.

The issue of whether a motor vehicle was acquired for the personal use of the debtor has generated a fair amount of jurisprudence over the relatively short period since the statutory revision. The opinions have also been diverse. This varied body of case law highlights the importance of each unique factual scenario, demonstrating that sweeping generalizations of what constitutes an acquisition for "personal use" will often be awkward and useless. *See generally In re Solis*, 356 B.R. 398, 411 (Bankr. S.D. Tex. 2006) ["In reaching conclusions... the Court must take into consideration all of the facts and circumstances of the case."].

In reliance upon the principle that "[i]t is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another," *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994), some courts have reasoned that Congress' repeated use of the phrase "personal, family, or household use" in other sections of the

Bankruptcy Code,[7] when juxtaposed against the use of the simpler phrase "personal use" in 1325(a)(*), must mean that the two phrases have mutually exclusive meanings. *In re Press*, 2006 WL 2734335 (Bankr. S.D. Fla. 2006) [adopting the position that the language in 1325(a)(*) refers only to vehicles purchased *exclusively* for personal use]; *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006); *cf. In re Bolze*, 2006 Bankr. LEXIS 2027 (Bankr. D. Kan. 2006) [rejecting the debtor's adoption of the same position].[8]  However, such a conclusion is neither mandated by the cited maxim of legislative construction nor logically sound.  A vehicle acquired for a "family use" may also be acquired for a "personal use," such as when an individual acquires a crew cab truck which is used to transport the family, but which is also used as an exclusive means for that individual to commute to work.  The phrases are not mutually exclusive, but rather the solitary "personal use" category simply defines a narrower subset of goods which have been acquired for a "personal, family, or household use."

Since the statute does not impose the §1325(a)(*) limitation only for those vehicles which are acquired "exclusively" or "solely" for the personal use of the debtor, the statute

---

[7] *See, e.g.*, 11 U.S.C. §§ 101(8) and 522(d)(3).

[8] The *Bolze* court cited the Debtor's brief, which argued, "The fact that Congress did not conjoin 'personal' with 'family and household' in the hanging paragraph, but did so in numerous other provisions of the Code, clearly indicates that it intended to exclude security interests in cars purchased for family and household use. . . ."

contemplates a mixed-use acquisition, but unfortunately fails to quantify a precise threshold at which the bifurcation prohibition will attach. Though a debtor's personal use need not be the exclusive, nor predominant, nor even the most substantial consideration at the time of acquisition in order for the §1325(a)(*) limitation to apply, neither will the mere demonstration of a *de minimus* use of the vehicle by the debtor after its purchase be solely sufficient to nullify a debtor's stated subjective intent that a vehicle was not acquired for his personal use.[9] Instead, absent more definitive legislative guidance and assuming the presence of all other prerequisites, this Court is persuaded that the personal use requirement is met and the §1325(a)(*) limitation is triggered if the personal use of a vehicle is intended at acquisition to be significant and material. *In re Solis*, 356 B.R. at 409, *In re Wilson*, 2006 WL 3512921, at *3 (Bankr. D. Kan. 2006).[10] The totality of the circumstances will dictate whether a particular use is significant and material.

---

[9] Indeed, evidence of actual use, while perhaps the best available evidence to corroborate a debtor's testimony regarding his subjective intent at the time of acquisition, cannot be absolutely determinative of such intent. As Judge Wesley Steen has noted:

> Although the jurisprudence sometimes discusses how the vehicle 'is used' rather than discussing the purpose for which it was acquired, the loose language in many cases can be attributed to lax evidentiary presentations, to the fact that in most cases there is probably no difference between intended use and subsequent actual use, and to the fact that the courts are judging credibility of testimony about intended use by observing actual use.

*In re Solis*, 356 B.R. at 409.

[10] However, the Court must note that it does not necessarily agree with the *Solis* conclusion that the terms "use" and "benefit" are indistinguishable in this context.

Under the circumstances of this case, this Mitsubishi vehicle was not acquired for the personal use of the Debtor. The Debtor testified that he acquired the vehicle for the use of his non-debtor spouse, and his testimony is corroborated by his minimal use of the vehicle. If this were the couple's sole vehicle at the time of acquisition, the Debtor's occasional use could be significant and material enough to constitute acquisition for his personal use. However, the Debtor testified without contradiction that, prior to and after his acquisition of the Mitsubishi, his transportation needs were almost exclusively met by his larger pickup which he prefers to the smaller Mitsubishi. Finally, even if responsibility for the checked box on the Debtor's financing application can be legitimately charged to the Debtor, such an indication is not fatal to the Debtor's case. The indication that he intended to purchase the vehicle for a "personal, family, or household use," (as opposed to a business, farm or commercial use) is consistent with the conclusion that the Debtor acquired the vehicle for his spouse's use, without contradicting his denial of an acquisition for *his* personal use. Finding that this vehicle was not acquired for the Debtor's personal use, Citifinancial is not entitled to the anti-bifurcation protection afforded by §1325(a)(*), and the Debtor's plan is not rendered unconfirmable by its invocation of the §506 cramdown provision as to Citifinancial's secured claim.

Accordingly, the Court concludes that objection to confirmation filed by Citifinancial should be overruled and that, in light of the Debtor's compliance with all

other prerequisites of §1325(a), the Debtor's Second Amended Chapter 13 plan should be confirmed. This memorandum of decision constitutes the Court's findings of fact and conclusions of law[11] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 04/10/2007

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[11] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.